UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| RAYMOND V. ALLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 20-107-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ANDREW SAUL, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Plaintiff Raymond Alley ("Alley" or "the plaintiff") appeals the Commissioner of Social Security's denial of his claim for disability insurance benefits. Specifically, Alley contends that the ALJ assigned to his case failed to determine whether he could work on a sustained basis and that he improperly evaluated the opinion evidence. Upon review of the record and the parties' arguments, the Court finds that the Commissioner's decision is based upon substantial evidence and correctly-applied rules of law. As a result, the Commissioner's administrative decision will be affirmed.

I.

Alley filed an application for disability insurance benefits ("DIB") on March 16, 2017. [*See* Administrative Transcript, hereafter "Tr.," 203.] This application was denied initially and on reconsideration. [Tr. 135, 142] Thereafter, Alley requested a hearing before an administrative law judge ("ALJ"). [Tr. 152] ALJ Jonathan Leiner held an administrative hearing on August 7, 2018, and issued a written decision denying benefits on February 13, 2019. [Tr. 30-77; 15-25] The ruling became the Commissioner's final decision when the

Appeals Council denied the plaintiff's request for review on March 16, 2020. [Tr. 1-3] Accordingly, this matter is ripe for judicial review. *See* 42 U.S.C. § 405(g).

## II.

Alley was 56 years old at the time of the ALJ's decision. [Tr. 203, 77] He performed work as a truck driver in the United States Army from 2003 to 2005 and was deployed to Iraq during that time. [Tr. 262] Alley was awarded benefits through the Veterans Administration ("VA") for service-connected disability: a fifty-percent impairment rating based on anxiety and a ten-percent impairment rating based on hearing loss. [Tr. 35] After he returned from his deployment, Alley worked as a truck driver in the private sector, but reports that he became unable to continue due to seizures on December 31, 2011. Alley's last insured date was December 31, 2016, and he was permitted to amend his onset date to September 18, 2015. [Tr. 36-37]

The plaintiff lives with his wife and adult son. [Tr. 55] He quit school in the tenth grade, but later obtained a GED. He attended Somerset Community College from 2012 through December 2016. [Tr. 223] Alley reported that he graduated with a degree in welding. *Id.*

Alley advised the ALJ that he was unable to work due to seizures and anxiety. [Tr. 39] He reported that, prior to the end of December 2016, he experienced seizures every 90 days, losing consciousness for about 15 minutes each time. [Tr. 40, 43] For several days following a seizure, he was very weak and lightheaded. He also reported that it took "two or three days to get every back … online" mentally. [Tr. 44] Alley further testified that, during this period, he took anti-seizure medication as prescribed from his provider at the VA.

With respect to anxiety, the plaintiff advised the ALJ that he had difficulty with crowds and loud noises. [Tr. 48] He reported that he attended church every other Sunday, but stopped attending in January 2017 due to his intolerance of crowded places. Alley also reported experiencing problems with anxiety when he attended Somerset Community College. When asked for an example, he reported that when he saw people who appeared to be Muslim, it "brought a lot back." [Tr. 50] He also advised the ALJ that his anxiety caused him to get into arguments with his family about two times each week. [Tr. 51]

Alley reported suffering anxiety attacks twice per week since he returned from Iraq. [Tr. 52] He testified that the panic attacks were triggered by "being out in public." He described the attacks as having to leave stores because there were too many people or getting into arguments because people asked him stupid questions. [Tr. 53] He took medication for anxiety as prescribed by his therapist at the VA, but he reported it did not help. [Tr. 54]

Alley presented to the Lake Cumberland Regional Hospital Emergency Department in June 2015 complaining of seizures. [Tr. 471] Laboratory testing revealed that his carbamazepine (anticonvulsant medication) level was subtherapeutic. [Tr. 655] Alley conceded that he might have missed one or two doses when there was a delay in shipping his medications from the VA.

During a follow-up appointment with his neurologist at the VA in October 2015, Alley reported having been seizure-free since June. [Tr. 484, 655] However, Alley returned to the emergency department complaining of seizures in April 2016. [Tr. 547] He reported that he had run out of his seizure medication a couple of days prior. On August 25, 2016, Alley's wife's advised Creed Pettigrew, M.D., that the plaintiff "stares off 2-4 times per week, almost daily at times. . . . [H]is eyes are wide open, described as 'bug-eyed' and [he] is looking

straight ahead. . . . [H]e can stare from 2-7 minutes, and it takes him a minute or so to snap out of it if [we] tap on his shoulder." [Tr. 611]  Pettigrew increased Alley's dosage of topiramate from 75 milligrams twice per day to 100 milligrams twice per day, and ordered an MRI of his brain.  He commented that Alley's memory impairment may "be related to subclinical seizures given wife's history of staring spells." [Tr. 611]

Alley underwent an electroencephalograph ("EEG") in September 2013 due to his reported history of seizures. [Tr. 672]  The EEG, obtained during the awake state, was moderately abnormal, with "intermittent bitemporal slowing" suggestive of "bihemispheric dysfunction." [Tr. 673]  No epileptiform activity was seen during the study.  A subsequent EEG was performed on September 9, 2016, based on Alley's complaints of worsening seizures. [Tr. 668]  Again, the EEG, obtained during the awake state, was moderately abnormal with intermittent bitemporal slowing, suggestive of bihemispheric dysfunction. [Tr. 669]

> Alley also had brain MRIs in 2014 and 2016.  The 2014 study revealed:
>
> 1.  No acute intracranial abnormality seen.  2.  Stable appearance of bilateral subcortical white matter and left basal ganglia region T2 and FLAIR hyperintensities likely due to chronic microvascular ischemic disease or focal ischemic demyelination.  3.  Chronic sinusitis with stable postsurgical changes and involvement of bilateral maxillary ethmoidal and right sphenoid sinuses.  4.  No abnormal contrast enhancement or intracranial mass lesions seen.
>
> The September 22, 2016 MRI showed:
>
> 1.  No recent infarct or abnormal enhancement.  2.  Dilation of the left > right lateral ventricles with focal tract of FLAIR/T2 hyperintensity beginning at the basal ganglia, extending through the corona radiata into the centrum semiovale, a likely seizure focus, for which correlation with EEG should be considered."

[Tr. 681]  Neurologist Kara Swafford, M.D., described the 2016 studies as showing "no significant change." [Tr. 722]

The plaintiff saw Sally McEnroe, APRN, for psychotherapy every 20 weeks in 2015 and 2016. McEnroe prescribed medication for depression and anxiety and provided talk therapy. In December 2015, Alley reported that he was doing well and enjoying school, but depressed about his unemployability. [Tr. 650] He stated that his psychotropic medications were effective and requested no changes.

Alley followed up with McEnroe in May 2016 and reported that he was doing well and denied depression. [Tr. 628] He stated that he was "a little bit nervous" and was pessimistic about obtaining employment due to his seizure disorder. He reported enjoying spending time with his grandchildren and having no problems at home. When Alley returned in October 2016, he continued to report compliance with medication and no depression. He advised McEnroe that he was "almost finished with school." [Tr. 591] He reported that he continued to experience anxiety, but his sleep was satisfactory and he had no problems at home.

Edd Easton-Hogg, Psy.D., performed a consultative psychiatric examination on September 18, 2015. Hogg noted that Alley's clothing was clean and appropriate for the season, he was well-groomed, and his gait/motor activity was normal. [Tr. 347] He was able to spell "world" backwards, could repeat a four-digit series of numbers forward, and a two-digit series of numbers in reverse. He was able to perform simple mathematical computations.

Alley's speech was normal and his thought content appeared appropriate to mood and circumstances. His affect was sad and his mood was somber. His attention to task was poor and his concentration appeared limited. His fund of knowledge appeared below average, but his capacity for abstraction was adequate.

Easton-Hogg opined that Alley's capacity to understand, remember, and carry out instructions toward the performance of simple, repetitive tasks was moderately affected. [Tr.

- 5 -

348] His ability to tolerate the stresses of day-to-day employment appeared to be affected to a marked degree. Easton-Hogg reported that Alley's ability to sustain attention and concentration toward the performance of simple, repetitive tasks was affected to a moderate degree. [Tr. 349] Finally, his capacity to respond appropriately to supervisors and coworkers in work setting appeared to be slightly limited.

Consultative source Mary Thompson, Ph.D., reviewed Alley's file on May 5, 2017. [Tr. 109-11] She determined that Alley had the following sustained concentration and persistence limitations: His ability to carry out detailed instructions and maintain concentration for extended periods was moderately limited. With respect to social interactions, Thompson believed that Alley's abilities to ask simple questions, request assistance, accept instructions, and respond appropriately to criticism were moderately limited. Finally, she reported that Alley's ability to respond appropriately to changes in the work setting was moderately limited.

Thompson also opined that the plaintiff could understand and remember simple and detailed instructions and procedures; sustain attention, concentration, and pace for simple tasks within regular tolerances including two-hour blocks of time; interact with peers and supervisors sufficiently for task completion and on an occasional basis with the public; and adapt to work demands and situational changes given reasonable support. Agency consultant Alex Guerrero M.D. reviewed the record on August 3, 2017, and agreed with Thompson's findings. [Tr. 123-29]

Consulting source Douglas Back, M.D., reviewed Alley's file on August 4, 2017. [Tr. 123-26] Having reviewed the medical evidence up to that point, Back determined that Alley did not have exertional limitations, but he should never climb ropes, ladders, or scaffolds. [Tr.

125] Further, he should avoid concentrated exposure to noise and avoid all exposure to hazards such as machinery and heights.

The ALJ determined that Alley had the following severe impairments: seizure disorder; a hearing disorder; a history of post-traumatic stress disorder ("PTSD"), anxiety disorder, and a depressive disorder. [Tr. 18] Following consideration of the entire record, the ALJ determined that, through the date last insured, Alley retained the residual functional capacity ("RFC") to perform a full-range of work at all exertional levels but with the following non-exertional limitations:

> The claimant could never climb ladders, ropes, or scaffolds. He could not tolerate concentrated exposure to noise. He could not work at heights or with moving machinery. The claimant regarding mental issues could understand, remember, and carry out simple instructions. He could occasionally understand, remember, and carry out detailed instructions. The claimant could maintain attention and concentration for two-hour periods within an eight-hour workday. He could perform work with no intrusive supervision. He could interact with the general public on an "intermittent" basis—that is, for no more than one-half of the workday. He could adapt to workplace changes if gradual, infrequent, and not fundamental in scope. He could perform work with no stringent time targets and no stringent production quotas.

[Tr. 20]

The ALJ concluded that Alley could not perform his past work, which was considered medium or heavy semi-skilled work. [Tr. 23] However, based on the vocational expert's testimony, there were jobs existing in significant numbers in the national economy that he could perform. [Tr. 24-25] Accordingly, he was not disabled under the Social Security Act ("Act").

## III.

A "disability" under the Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one

year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination regarding disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. 20 C.F.R. § 404.1520(e). If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312

F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV.

### A. Findings Regarding Alley's Ability to Work on a Sustained Basis

Alley contends that the ALJ failed to make findings with respect to his ability to perform work activities on a sustained basis. [Record No. 11-1, p. 7] An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

It does not appear that the ALJ made explicit findings with respect to Alley's ability to perform work on a sustained basis. However, the plaintiff has not shown that the ALJ's opinion must include any "magic words" with respect to this issue. Consultative source Alex Guerrero, M.D., determined that Alley could interact with peers and supervisors sufficiently for task completion and on an occasional basis with the public; and adapt to work demands and situational changes given reasonable support. Guerrero noted that his conclusions were

based on Alley's *ability to perform sustained work activity*.  The ALJ adopted these opinions, thereby basing his conclusions on Alley's ability to perform sustained work.

Further, the ALJ expressly considered the plaintiff's ability to work on a sustained basis by noting that he could "maintain attention and concentration for two-hour periods *within an eight-hour workday*" and could "interact with the general public on an "intermittent" basis—that is, for *no more than one-half of the workday*."  See *Johnson v. Comm'r of Soc. Sec.*, 2012 WL 1019594, at *5 (E.D. Mich. Feb. 28, 2012) (observing that ALJ expressly considered plaintiff's ability to work on a sustained basis by noting that sit/stand option could not take her off task for more than 10% of the work period).

Alley also contends that the ALJ impermissibly "cherry picked" activities from the record, like shopping and attending church, which he did not perform on a sustained basis. The plaintiff correctly notes that an ALJ may not rely on isolated, non-sustained activities and give them more weight than other substantial evidence of record, such as a treating physician's opinion.  See *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013).   However, that is not what happened here.

Although the ALJ mentioned Alley's shopping and church attendance, he did not rely on those activities alone to determine that Alley could perform sustained work.  Instead, he relied on all of the evidence, particularly the opinions of consulting sources.  The plaintiff has not identified any evidence, other than his subjective complaints, that conflict with the ALJ's conclusions regarding sustained work.[1]

---

[1]  Alley has not challenged the ALJ's assessment of his subjective complaints or credibility determinations.

### B. Weighing of Medical Opinions

For claims filed prior to March 27, 2017, such as the plaintiff's, ALJs must provide "good reasons" for not giving controlling weight to the opinion of a claimant's treating physician. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527. However, no treating source provided an opinion regarding the plaintiff's functional limitations in this case.

All other medical sources are weighed according to criteria including the source's examining/treating relationship with the plaintiff; whether the source is a specialist; supportability of the opinions; and consistency of the opinions with the medical record. 20 C.F.R. § 404.1527(c). Generally, more weight is assigned to the medical opinion of a source who has examined the plaintiff than a source who has not. *Id.* The ALJ is not required to expressly articulate "good reasons" for discounting the opinion of a non-treating source. *See Jewell v. Astrue*, 2008 WL 4656911, at *3 (E.D. Ky. Oct. 21, 2008) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)).

### 1. Dr. Edd Easton-Hogg

Easton-Hogg examined Alley on September 18, 2015. Alley was permitted to amend his onset date to the date of Easton-Hogg's examination.[2] The ALJ agreed with Easton-Hogg's analysis, for the most part, but believed he had overestimated the plaintiff's limitations regarding the ability to handle the stress and pressure of day-to-day employment. [Tr. 19] Easton-Hogg concluded that the plaintiff was limited to a marked degree in this area, which

---

[2] It is unclear why Easton-Hogg examined Alley in September 2015, since he did not file his application for Social Security benefits until March 2017. Counsel for the plaintiff suggests that Easton-Hogg's report might relate to a claim for Medicaid *via* the Kentucky Department for Disability Determination. [Record No. 11-1, p. 6 n.2]

mean that "[t]he ability to function is severely limited, but not precluded." [Tr. 348] The plaintiff contends that this was inappropriate.

The ALJ provided sufficient reasons for discounting this portion of Easton-Hogg's opinion, concluding that it was "considerably disproportionate to the remainder of the documentary record." [Tr. 19] First, Easton-Hogg expressed a diagnosis of post-traumatic stress disorder, which was not supported elsewhere in the record. Further, the plaintiff regularly advised Ms. McEnroe that he was doing well and attending classes at Somerset Community college. [Tr. 50] In September 2016, he reported that he did not eat much because he was busy doing homework. [Tr. 802] At the time of his application for DIB, Alley reported that he had recently completed specialized training in welding. [Tr. 223]

The ALJ also noted that Alley had falsely advised Easton-Hogg that he was not able to go shopping. Further, in May 2013, the plaintiff underwent neuropsychological testing, but reportedly gave poor effort. [Tr. 23] Further testing was not recommended, as "[t]he most likely outcome from repeated testing is increasing [Alley's] familiarity with the validity procedures making them less effective in detecting poor effort in the future." [Tr. 811] Accordingly, the ALJ did not err in discounting a portion of Easton-Hogg's opinion.

### 2. Dr. Guerrero

The plaintiff asserts that the ALJ gave too much weight to Guerrero's opinion because Guerrero did not review Alley's 2016 MRI and EEG or Dr. Pettigrew's August 25, 2016 treatment note discussing Alley's staring spells. [Record No. 11-1] However, Guerrero's opinion was rendered in August 2017 and his report states that he reviewed all medical evidence of record on file. [Tr. 128]

The ALJ assigned weight to Guerrero's opinion, observing that the moderate limitations he assessed were generally consistent with the evidence of record. [Tr. 22] State agency medical consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims" under the Social Security Act. SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). Further, the plaintiff has not identified an opinion from a treating source that imposes greater limitations on his work-related activities.

C. **The Commissioner's Decision is Supported by Substantial Evidence**

It is the plaintiff's burden to prove the extent of his impairments and, thus, his RFC. *See Her*, 203 F.3d at 391. However, he has not identified any evidence of record indicating that the RFC should be more restrictive. The ALJ relied largely on the opinions of consulting sources Thompson, Guerrera, and Back in articulating the RFC. The mental component accommodates the moderate limitations assessed by Thompson and Guerrera and is supported by the plaintiff's demeanor and conduct during medical appointments, as well as his ability to attend college for four years and obtain a welding degree. The ALJ also gave weight to the majority of Easton-Hogg's opinion, which is the only other mental evaluation in the record.

The plaintiff does not appear to challenge the physical limitations imposed, but the Court notes that the RFC is consistent with the postural limitations assessed by Dr. Back. [Tr. 125] Finally, the plaintiff's testimony during the administrative hearing supports the ALJ's findings. Although the plaintiff endorsed some degree of anxiety, he reported experiencing seizures only every 90 days and was able to attend school throughout the period.

V.

For the reasons outlined above, it is hereby

**ORDERED** as follows:

- 14 -

     1.     Plaintiff Raymond V. Alley's motion for summary judgment [Record No. 11] is **DENIED**.

     2.     Defendant Commissioner of Social Security's motion for summary judgment [Record No. 13] is **GRANTED**.

Dated: December 4, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky